**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

NATALIYA BONDARENKO,

      Plaintiff,

vs.                                                  CASE NO. 3:06-cv-925-J-TEM

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

      Defendant.

_____

## ORDER AND OPINION

This matter is before the Court on Plaintiff's complaint (Doc. #1), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's claim for Supplemental Security Income payments ("SSI"). The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number).

The undersigned has reviewed and given due consideration to the record in its entirety, including the parties' arguments presented in their briefs, their respective reply briefs, and the materials provided in the transcript of the underlying proceedings. Upon review of the record, the undersigned found the issues raised by Plaintiff were fully briefed and determined oral argument would not benefit the undersigned in making his determinations.

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25, Federal Rules of Civil Procedure, Michael J. Astrue is substituted as Defendant herein.

Accordingly, the instant matter has been decided on the written record. For the reasons set out herein, **the Commissioner's decision is AFFIRMED**.

## I. Procedural History

On March 1, 2001, Plaintiff filed an application for SSI (Tr. 87-91).[2] Plaintiff's application was denied initially and upon reconsideration. Pursuant to Plaintiff's request, an administrative hearing was conducted on October 17, 2003, in Jacksonville, Florida, before Administrative Law Judge ("ALJ") John Marshall Meisburg, Jr. (Tr. 453-67). In a decision dated June 30, 2005, the ALJ denied Plaintiff's claim by ultimately finding her ineligible for benefits by virtue of her failure to follow prescribed treatment (Tr. 36, Finding 11). On August 28, 2006, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff now appeals under 42 U.S.C. Section 405(g).

## II. Standard of Review

A plaintiff is entitled to disability benefits under the Social Security Act when he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A).

For purposes of determining whether a claimant is disabled, the law and regulations governing a claim for disability benefits are identical to those governing a claim for supplemental security income benefits. *Patterson v. Bowen*, 799 F.2d 1455, 1456, n. 1

---

[2] An individual cannot receive SSI benefits for any period prior to the month in which the SSI application is filed. *See* 20 C.F.R. § 416.501. Thus, the relevant period for deciding Plaintiff's case is the month in which she filed her SSI application and thereafter. *See, e.g., Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993) (stating the proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date).

(11th Cir. 1986). The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. § 416.920(a)(4)(i-v);[3] *Crayton v. Callahan*, 120 F. 3d 1217, 1219 (11th Cir. 1997). Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. *See also Richardson v. Perales*, 402 U.S. 389, 390 (1971).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67

---

[3] Unless otherwise specified, all references to 20 C.F.R. will be to the 2007 edition.

F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so.  While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of HHS*, 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).  Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

As in all Social Security disability cases, Plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments.  *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require").  It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove they suffer from disabling physical or mental functional limitations.  20 C.F.R. § 416.912(c).

### III. Background Facts

Plaintiff was born on March 3, 1958, making her 45 years old as of the date of the administrative hearing (Tr. 456). Plaintiff is 65 inches tall and weighed 306 pounds at the October 17, 2003 hearing (Tr. 460; *see also* Tr. 22). Plaintiff has a high school education from the Ukraine and no past relevant work experience (Tr. 14).

At Step One of the sequential evaluation process, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability (Tr. 15). At Step Two, the ALJ determined Plaintiff suffered from the following severe impairments:

> Status post fracture of right proximal tibia in 1983 requiring multiple surgeries including ORIF [Open Reduction Internal Fixation] with residual moderate to marked pain involving the knee; degenerative knee arthritis of right knee; bronchial asthma associated with dyspnea on moderate activity (PFT [physical fitness test] revealed severe obstructive pulmonary disease); low back mechanical pain; advanced degenerative arthritis and disc disease at L5-S1; hypertension; type II diabetes; and gross obesity.

(Tr. 24.)

After finding that her impairments did not meet or equal the criteria found in Appendix 1, Subpart P, Regulations No. 4 ("the Listings") at Step Three of the sequential evaluation process (Tr. 24), the ALJ assessed Plaintiff's residual functional capacity ("RFC") and determined her impairments prevented her from performing any type of work activity at any level of exertion, even sedentary (Tr. 27).[4] Since Plaintiff did not have any past relevant work experience (at Step Four of the sequential evaluation process), the ALJ proceeded to Step Five (Tr. 28).

---

[4] Sedentary work, as defined by the Regulations, involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. § 416.967(a). Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. 20 C.F.R. § 416.967(a).

At Step Five, the ALJ determined that a finding of disabled was warranted because Plaintiff was unable to perform even sedentary work on a regular and continuing basis (Tr. 28). The ALJ, however, went on to determine that Plaintiff was not eligible for benefits pursuant to 20 C.F.R. § 416.930 because Plaintiff was non-compliant with her prescribed medical treatment for her obesity (Tr. 29-35). The ALJ determined that if Plaintiff had followed her prescribed treatment her RFC would have been restored to at least the sedentary level and that she would have been able to perform substantial gainful activity (Tr. 35).

## IV. Analysis

Plaintiff argues the ALJ erred by failing to apply the correct legal standards under 20 C.F.R. § 416.930[5] and Social Security Ruling ("SSR") 82-59, and thus, the ALJ's decision is not supported by substantial evidence (Docs. #11 and #15).

Social Security Ruling 82-59, entitled *Titles II and XVI: Failure to Follow Prescribed Treatment*, states that a determination of failure to follow prescribed treatment can only be made where all of the following conditions exist: (1) the evidence establishes that the claimant cannot engage in substantial gainful activity; (2) the impairment has lasted or is expected to last twelve continuous months from onset of disability or is expected to result in death; (3) treatment which is clearly expected to restore capacity to engage in any substantial gainful activity ("SGA") has been prescribed by a treating source; and (4) the evidence of record discloses that there has been refusal to follow the prescribed treatment.

---

[5] The Court notes that Plaintiff cites 20 C.F.R. Section 404 throughout her memorandum in opposition to the Commissioner's decision. Section 404, however, applies only to DIB. For the sake of conformity with the Regulations, the Court has taken the liberty to substitute the proper citation to 20 C.F.R Section 416 throughout this Order and Opinion when referencing Plaintiff's arguments so the proper code sections will correspond to Plaintiff's claim for SSI.

SSR 82-59, 1982 WL 31384, at *1 (S.S.A. Nov. 30, 1981).

In this matter, the Court finds the evidence of record reveals that all of the aforementioned conditions have been met; however, Plaintiff contends the ALJ incorrectly determined that she failed to follow prescribed treatment because her prescribed treatment was a diet and not the end result of the diet, which was to ultimately lose weight (Docs. #11 and #15). Plaintiff further contends that the ALJ erred by finding that if Plaintiff had followed her prescribed treatment her ability to work would have been restored (Docs. #11 and #15). The Court is not persuaded by either of Plaintiff's arguments for the following reasons.

Under the Regulations and the law of this circuit, where prescribed medical treatment would restore the ability to work, a claimant's refusal to follow such treatment without a good reason will preclude a finding of disability. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); 20 C.F.R. § 416.930; *see also Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir.1988). Additionally, an ALJ must make explicit findings in this regard if benefits are to be denied. *See Dawkins*, 848 F.2d at 1213.

In cases involving obesity, "[a] physician's recommendation to lose weight does not *necessarily* constitute a prescribed course of treatment, nor does a claimant's failure to accomplish the recommended change constitute a refusal to undertake such treatment." *McCall v. Bowen*, 846 F.2d 1317, 1319 (11th Cir.1988) (*per curiam*) (*emphasis added*). Furthermore, "obesity , of itself, does not justify the conclusion that [a claimant] has refused treatment, nor [does it justify] the consequent denial of disability benefits." *Id.* at 1329. Since it is impermissible to presume obesity can be remedied, "[f]urther findings of fact and conclusions of law are required before the [Commissioner] may determine that a claimant

has refused treatment." *Id.*

Concerning Plaintiff's first argument, the record reflects Plaintiff has been diagnosed with morbid obesity and that she has been "urged" to lose one hundred pounds by her treating physician, Fred Porcase, D.O. ("Dr. Porcase").  To achieve the recommended weight loss, Dr. Porcase instructed Plaintiff to follow several different diet plans (Tr. 452). The Court notes being prescribed a diet plan goes beyond a mere recommendation that a patient lose weight.

In response to interrogatories submitted to Dr. Porcase by the ALJ, Dr. Porcase stated: "I have prescribed multiple diets from the American Diabetic Association for this patient [Plaintiff]. . . . Patient [was] grossly noncompliant and has no intention of losing any weight."  (Tr. 452.)  Additionally, Dr. Porcase stated in his response to the ALJ's interrogatories that he believed if Plaintiff would have followed his prescribed diet(s) she could have lost one hundred pounds over a one year period, but she did not do so because she is a "food addicted individual" who was "grossly noncompliant" (Tr. 452).

Moreover, Dr. Porcase stated that, in his opinion, if Plaintiff lost the recommended one hundred pounds, her medical condition would improve to the point where she would "certainly" be able to return to work (Tr. 452).

In support of Plaintiff's argument that the ALJ erred by finding she was non-compliant with prescribed treatment because the ALJ impermissibly equated her prescribed diet with weight loss, Plaintiff cites a prior decision by this Court, *Russ v. Barnhart*, 363 F. Supp. 2d 1345 (M.D. Fla. 2005) (Doc. #11 at 12).  The Court notes that *Russ* ironically involved the same attorney and ALJ as the instant case and indeed involved similar facts; however, *Russ* differs factually from the case at bar in several determinative ways and is,

therefore, distinguishable.

Specifically, in *Russ*, this Court found the ALJ erred by equating compliance with success when the ALJ "acknowledged–and did not discredit–[the plaintiff's] testimony 'that [although] she tried to follow the diet and that she did not eat very much," she remained unable to lose weight. 363 F. Supp. 2d at 1348. Here, the Plaintiff argues that the case at bar is similar because the ALJ found the Plaintiff credible concerning her attempts to follow her prescribed diet(s) (Doc. #11 at 11). The Court, however, finds the ALJ did not find Plaintiff credible concerning her attempts to follow her prescribed diet(s) for the following reasons.

In support of Plaintiff's contention that the ALJ found her credible as to the compliance issue, Plaintiff cites the portion of the ALJ's decision wherein the ALJ makes the following statement:

> The description of symptoms and limitations, which the claimant has provided throughout the record, has been consistent and persuasive. Another factor influencing the conclusions reached in this decision is the claimant's general persuasive appearance and demeanor while testifying at the hearing. Based upon the above, the undersigned finds the claimant's testimony credible and consistent with the evidence of record when considered in its entirety.

(Tr. 26.)

Although the above statement by the ALJ, when viewed in isolation, might appear to some that the ALJ found Plaintiff credible concerning her attempts to follow her diet(s), the Court finds the ALJ was referring to Plaintiff's physical "symptoms and limitations" related to her disabling medical conditions when he made the aforementioned statement. The Court notes that the paragraph within which the ALJ made the aforementioned statement concerns only Plaintiff's physical limitations that are a result of her medically

9

determinable impairments (*see* Tr. 26).

Additionally, the Court notes that the ALJ analyzed Plaintiff's obesity and non-compliance with prescribed treatment in an entirely separate section of his decision from the section in which he made the statement at issue. The Court finds it significant that the ALJ demarcated this separate section by entitling it *Non-compliance (Obesity and Weight loss)* (Tr. 29-35), and that it was within this section he found Plaintiff not credible because controlling weight went to the opinion of her treating physician, who stated Plaintiff was "grossly noncompliant" with her prescribed diet(s) (Tr. 33-35, 452).

Additionally, at Plaintiff's hearing, the ALJ stated (in response to Plaintiff's attorney's attempt to object to the ALJ obtaining interrogatories from her treating physician regarding the compliance issue) "regardless of what she [Plaintiff] says [concerning her alleged attempts to follow her diet(s)], I want the opinion of a treating physician, even if she. Even if she says she's following the diet, the doc–, the treating physician may have a different opinion." (Tr. 464-65.)

Moreover, the mere fact the ALJ found Plaintiff non-compliant subsequent to her testimony that she was compliant certainly indicates he did not find her credible concerning her alleged compliance with her diet(s).

Accordingly, and for the aforementioned reasons, it stands to reason that the ALJ did not find Plaintiff credible as to the compliance issue. Therefore, the facts of this case differ significantly from the facts in *Russ* because the ALJ in the instant case never acknowledged Plaintiff's testimony that she was compliant with her diet(s). In fact, the ALJ discredited Plaintiff's testimony by giving controlling weight to the testimony of her treating physician, who stated she was grossly non-compliant (Tr. 33-35, 452).

Thus, the Court finds the ALJ in the instant case made the requisite "further findings" of fact (as required by *McCall*, *supra*) when he obtained the opinion of Plaintiff's treating physician, who stated Plaintiff had failed to follow the prescribed diet(s) and that, as a consequence, she failed to lose the recommend amount of weight. The ALJ committed no error when he gave Plaintiff's treating physician controlling weight and determined that Plaintiff failed to follow her prescribed treatment (the direct result of which was Plaintiff's failure to accomplish the recommended weight loss–which her treating physician stated was possible if she had been compliant) (Tr. 452).

Plaintiff's second argument is that the ALJ erred when he determined that if Plaintiff had followed her prescribed treatment she would have been able to return to work given all of her medical impairments (Doc. #11 at 15). Specifically, Plaintiff makes much of the fact that Plaintiff's treating physician, Dr. Porcase, only treated Plaintiff for hypertension, diabetes, hypothyroidism, and morbid obesity (Doc. #11 at 15; *see also* Tr. 32). Plaintiff argues that she suffers from a myriad of other ailments that could potentially preclude her from engaging in substantial gainful activity even if she were to lose the amount of weight recommended by Dr. Porcase (Doc. #11 at 15-18).

The Court is not persuaded by Plaintiff's argument because the Court finds the ALJ's finding in this regard is supported by substantial evidence. Specifically, Dr. Porcase stated in his answers to the ALJ's interrogatories that, if the claimant had followed the prescribed diet(s), she could have lost the recommended amount of weight and if she had lost the recommended weight she "certainly" would have been able to return to work (Tr. 452).

The Court notes that, although Dr. Porcase only treated Plaintiff for hypertension, diabetes, hypothyroidism, and morbid obesity, the record reflects he treated Plaintiff for

11

over two and one half years and was aware of Plaintiff's other ailments (*see* Tr. 358 and 321-22). Specifically, on March 17, 2003, Dr. Porcase filled out a medical source statement concerning Plaintiff's ability to perform work-related physical activities (Tr. 321-22). In the medical source statement, Dr. Porcase stated that Plaintiff had significant work related limitations due to her chronic back pain, short right leg, and four prior surgeries on her right knee (Tr. 321-22).

Although Dr. Porcase did not list all of Plaintiff's medically determinable severe impairments, as were found by the ALJ, on the aforementioned medical source statement, the ultimate judgment as to whether prescribed treatment can be expected to restore a claimant's ability to work is reserved for the Commissioner. SSR 82-59, 1982 WL 31384, at *2. Additionally, SSR 82-59 specifically provides: "[i]n the event the treating source states that prescribed treatment will restore ability to work, consideration should be given to such opinion." *Id.*

Here, the ALJ gave controlling consideration to the opinion of Plaintiff's treating physician in making his determination that compliance with prescribed treatment would have restored Plaintiff's ability to work. In *Russ*, this Court found it significant that the statement from the treating physician in that case merely said that it was his opinion the plaintiff's condition "*may* have improved were such treatment undertaken when first prescribed." 363 F. Supp. 2d at 1348 (*emphasis added*).

The ALJ in the instant case obtained testimony from Plaintiff's treating physician that indicated Plaintiff would have definitely been able to return to work had she followed his prescribed treatment. Dr. Porcase stated it was his opinion that if Plaintiff lost the recommended amount of weight, her medical condition would improve to the point where

12

she would "certainly" be able to return to work (Tr. 452).

Accordingly, the Court finds Plaintiff's second argument fails because the ALJ's determination that Plaintiff could have returned to work given all of her impairments is supported by substantial evidence for the aforementioned reasons.

Plaintiff also contends that the ALJ erred by not assessing Plaintiff another RFC once he determined her failure to follow prescribed treatment prevented her form returning to work. Specifically, Plaintiff states: "[t]he ALJ, if it is determined that he properly found that [Plaintiff] failed to follow prescribed treatment, was still required to specifically address her remaining impairments and determine her RFC as the result of such impairments" (Doc. #15 at 5).

Plaintiff's argument is illogical and is not supported by the Regulations or the case law of this circuit.[6] Social Security Ruling 82-59 recognizes that non-compliance is only an issue when the individual meets Social Security's definition of disability, but the claimant refuses to follow prescribed treatment. 1982 WL 31384, at *1. Here, the ALJ already determined Plaintiff's RFC and determined that she was disabled, but for her failure to follow prescribed treatment pursuant to 20 C.F.R. § 416.930. Section 416.930 provides: "[i]f you [the claimant] do not follow prescribed treatment without a good reason [such as religious reasons or fear of a high-risk surgical procedure] we will not find you disabled or blind, or if you are already receiving benefits, we will stop paying you benefits." Nothing in this section provides for any re-assessment of a claimant's RFC that has already been determined by the ALJ.

---

[6] The Court notes Plaintiff cited no case law that directly supports this novel position.

In the instant case, the ALJ found Plaintiff failed to follow her prescribed treatment, and that if she had followed her prescribed treatment she would have been able to return to work at the sedentary level. As stated *supra*, the determination as to whether prescribed treatment can be expected to restore the ability to work is reserved for the Commissioner, and in this regard, SSR 82-59 provides that consideration should be given to the treating source. 1982 WL 31384, at *2. Here, the ALJ gave Plaintiff's treating physician controlling weight, and the Court finds the ALJ's decision to give Plaintiff's treating physician is supported by substantial evidence as set forth herein.

### V. Conclusion

For the foregoing reasons, the Court finds the decision of the Commissioner was decided according to proper legal standards and is supported by substantial evidence. Accordingly, the Commissioner's decision is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment consistent with this Opinion and, thereafter, to close the file. Each party shall bear its own costs.

**DONE AND ORDERED** at Jacksonville, Florida this  31st day of March, 2008.

Copies to all counsel of record
       and *pro se* parties, if any

*Thomas E. Morris*
**THOMAS E. MORRIS**
United States Magistrate Judge